and 19-1002, both titled Custom Media Technologies v. DISH Network. So, Mr. Morey. If I may have just a minute? Sure. Thank you. Thank you. So, with respect to the 494 claims. The, the, the, it's largely the same. The slight difference is in the prosecution. After a first notice of violence. The patent office pulled back the issued claim for the notice of violence based on Alice, and it was reviewed the examiner. In an interview said that the prior claims did not specifically recited improvement to the functionality of the computer that would satisfy Alice. So the examiner proposed an amendment. So, what you'll find that this is on a PPX 9255. And the examiner said that if the system was changed such that there is active reservation going on. Not simply that the system was reserved like you would reserve a table for dinner. But that there was the computer was changed so that the computer through the processor with software. Actively protects that memory. So it's an action that's going on that they would be that a eligible subject matter because it would improve the functioning of the computer. The improvement is that it guarantees a space for the service that's being provided. In this case, the ad delivery service. The examiner also mentioned on a PPX 9141 that this reserve storage section was the inventive concept. When considering the eligibility and novelty of the claim. The arguments and so forth I made previously I would incorporate here. Thank you. Do you have anything you need to add? No, I would just the thing that I wanted to point out in connection with that issue was. At appendix page 103 you'll see the board's analysis of the actual notice of allowability in the 494 patent prosecution history. Which there the examiner found that the notion of reserving storage space for advertising data was known in the prior art. And that was the March reference that the examiner was using during prosecution. So whatever the examiner thought when allowing the claims over over 101 that was just air. There's nothing in the claims that justifies a conclusion that these claims are not ineligible under 101. And again, we have a cross appeal in this case. If there's any questions about that cross appeal, I'm happy to answer them. Otherwise, I'll just reserve the balance of my time. We don't get any more time. I'm sorry. Yes. Then I'll just sit down. You're done. That's fine. Thank you. So you can find Marsh at APPX 3042. Marsh was filed in April of 1996. We were filed in 1997. There is no evidence in this record that any of the techniques in Marsh were conventional, well known, in use. In fact, it's most likely that Marsh was still confidential inside the patent office until it issued under the rules at that time. Deere tells us that novelty is not an issue in determining 101. The issue really is, is it established as a conventional technique in use? The examiner looked at Marsh and said it doesn't apply. It would not. We have more stuff in our system. So we have a network that's controlling access. We're providing the network direct access to the storage location.  So we are different than Marsh. So that's what I wanted to address is that simply saying that one reference was somewhat similar doesn't mean then that nobody can use that to improve a different system. Thank you. So I think that we've covered all four cases. That concludes our proceedings. We thank both counsel very much for the cooperation. Thank you. All rise. Thank you.